468 So.2d 1323 (1985)
John A. SPRAGIO and Mrs. John A. Spragio
v.
The BOARD OF TRUSTEES OF the STATE EMPLOYEES GROUP BENEFITS PROGRAM, State of Louisiana.
No. 84 CA 0327.
Court of Appeal of Louisiana, First Circuit.
April 16, 1985.
Writ Denied June 17, 1985.
*1324 Jack P. Harris, Baton Rouge, for plaintiffs-appellees John A. Spragio and Mrs. John A. Spragio.
Tommy D. Teaque, Baton Rouge, for defendant-appellant Board of Trustees of the State Employees Group Benefits Program, State of Louisiana.
Before COLE, CARTER, and LANIER, JJ.
CARTER, Judge.
This is an appeal by defendant, the Board of Trustees of the State Employees Group Benefits Program, from the trial judge's decision ordering the Board to accept and approve plaintiffs' request for participation in the state's group insurance benefits program. Plaintiffs answered the appeal, seeking to have Act 243 of 1982, as it amends LSA-R.S. 42:851, declared unconstitutional.

FACTS
John A. Spragio was employed by the Department of Health and Human Resources (DHHR). As an employee of the state, he was a participant in the health and life insurance plan provided by the group benefits program.[1] He resigned from the Division of Family Services in February of 1976, when he was forty-nine years old. At the time of his resignation, Spragio had acquired 27.4 years of membership service credit in the Louisiana State Employees Retirement System.[2]
Although vested with retirement benefits, he could not receive these benefits until he reached fifty-five years of age. From the time he resigned until his 55th birthday, Spragio was not eligible and was not a participant in the health and life insurance plan provided by the State Employees Group Benefits Program.[3]
Subsequent to his resignation, but prior to the time Spragio became eligible to receive retirement benefits, the Board of Trustees of the State Employees Group Benefits Program was created by Acts 1979, No. 745, Section 1, effective July 20, 1979.[4] On March 19, 1980, the Board *1325 adopted a resolution[5] to define "retiree" for purposes of insurance benefits program eligibility. The Board's action excluded from eligibility those persons such as Mr. Spragio, who had resigned from state employment with the requisite years of service, but who were not yet eligible to receive their retirement stipends because they had not reached the required age.
On August 29, 1981, Spragio reached the requisite age (fifty-five) and became eligible to receive retirement benefits. However, upon applying for re-enrollment in the insurance benefits program, the Board refused to allow the Spragios to participate in the insurance benefits program based upon its March 19, 1980, resolution.
Plaintiffs filed a petition for declaratory judgment seeking a judicial determination of the validity of the Board's action. Thereafter, the Legislature, by virtue of Acts 1982, No. 243, Section 1, amended LSA-R.S. 42:821(A) and LSA-R.S. 42:851(A) to provide, in part, that an employee is "a retiree, as defined by the rules and regulations of the Board of Trustees of the State Employees Group Benefits Program...." In response to this action, plaintiffs filed a supplemental petition challenging the constitutionality of this amendment.
The trial judge rendered judgment in favor of plaintiffs, ordering the Board to allow plaintiffs to enroll in the insurance benefits program. From this judgment, the Board appeals, urging six assignments of error.[6] Plaintiffs answered the appeal challenging the constitutionality of Acts 1982, No. 243, Section 1, as it amended *1326 LSA-R.S. 42:821(A) and LSA-R.S. 42:851(A).

ASSIGNMENTS OF ERROR NOS. 1, 2, & 3
In these assignments of error, defendant contends that the trial court erred in finding that the Board superseded its authority in adopting the May 19, 1980, resolution defining "retiree." Defendant reasons that LSA-R.S. 42:853 is ambiguous and that the resolution is consistent with the provisions of LSA-R.S. 42:853.
By Acts 1979, No. 745, the Legislature created the Board of Trustees of the State Employees Group Benefits Program and empowered the Board to administer the program. See LSA-R.S. 42:871-879. Among the powers delegated to the newly created Board is the power "to adopt and promulgate rules and regulations for the operation of the board and for the administration and operation of the program, which shall not be inconsistent with the provisions of this Chapter or other applicable laws." LSA-R.S. 42:874(A)(5).
On May 19, 1980, the Board passed the resolution defining "retiree" as a person who prior to retirement was participating in the State Employees Group Benefits Program and who upon retirement was immediately eligible to receive retirement benefits.[7] However, at the time of Spragio's retirement, LSA-R.S. 42:851 provided, in part, as follows:
A. The state of Louisiana and each of its governmental and administrative subdivisions, departments, or agencies ... are authorized to procure contracts of insurance covering their respective employees, officials, and department heads, or any class or classes thereof under a policy or policies of group health, accident, accidental death and dismemberment, and hospital, surgical, or medical expense benefits, or may adopt, administer, or operate or contract for all or a portion of the administration, operation, or both, of a self-funded program for that purpose. Each such contract shall be approved by the Board of Trustees of the State Employees Group Benefits Program.... The dependents of any such employees, officials, or department heads may be covered under group policies or programs which provide hospital, surgical, or medical expense benefits. (Emphasis added)
Additionally, LSA-R.S. 42:853, which was neither amended nor repealed, specifically or by implication, by Acts 1979, No. 745, provided as follows:
For the purposes of R.S. 42:821 through 852, the terms "employees", "officials", "department heads" and "heads of departments" shall include any former employee, official, department head or head of department who is enjoying the benefits of retirement. (Emphasis added)
Defendant argues that LSA-R.S. 42:853 is ambiguous in that "enjoying the benefits of retirement" is susceptible to a number of interpretations, including free time to pursue hobbies, more time to spend with family, or simply not having to get up for work five days a week. Defendant further argues that since the statute is ambiguous, the Board had the authority to define "retiree" because the broad grant of authority given the Board includes the power to promulgate reasonable definitions of terms not otherwise defined by statute. We disagree.
The fundamental rule of construction is to ascertain and give effect to the intention of the legislature as expressed in the statute. Webb v. Parish Council, 217 La. 926, 47 So.2d 718 (1950); Clark v. Board of Comrs., Etc., 422 So.2d 247 (La. App. 4th Cir.1982); Parish of Jefferson v. Stansbury, 228 So.2d 743 (La.App. 4th Cir. 1969). It is, therefore, presumed that the legislature understood the meaning and effect of the words used in a statute and intended to use those words, that every provision has a useful purpose, and that effect is to be given to each provision. State v. Texas Co., 205 La. 417, 17 So.2d 569 (1944); State v. Coulon, 197 La. 1058, *1327 3 So.2d 241 (1941); Bunch v. Town of St. Francisville, 446 So.2d 1357 (La.App. 1st Cir.1984); Lyons v. H.K. Ferguson Co., 16 So.2d 587 (La.App. 1st Cir.1944).
When a statute is clear and free from all ambiguity, it must be given effect as written. LSA-C.C. art. 13. Hebbler v. New Orleans Fire Department, 310 So.2d 113 (La.1975); J. Dixon, Judicial Method in Interpretation of Law in Louisiana, 42 La.L.R. 1661, 1665 (1982). Furthermore, a statute should be construed according to the fair import of its words, taken in their usual sense in connection with the context. LSA-C.C. art. 14; LSA-R.S. 1:3; State v. Brady, 310 So.2d 593 (La.1975).
Additionally, by Acts 1972, No. 135 § 1, the legislature clearly defined "retirement benefit" as "an annuity for life paid in equal monthly installments." LSA-R.S. 42:543(25).
The trial judge determined that the May 19, 1980, resolution defining "retiree" is inconsistent with the provisions of LSA-R.S. 42:853. We agree. A careful reading of LSA-R.S. 42:821(A) and LSA-R.S. 42:851(A), as they read prior to the 1982 amendment, in conjunction with LSA-R.S. 42:543(25) and LSA-R.S. 42:853 convinces us that when Spragio became eligible to receive retirement installments on August 29, 1981, he only then commenced "enjoying the benefits of retirement" and was thus an "employee" for the purposes of LSA-R.S. 42:821(A) and LSA-R.S. 42:851(A). See LSA-R.S. 42:543(25) and LSA-R.S. 42:853. As an employee, Spragio was qualified to participate in the insurance benefits program provided for in LSA-R.S. 42:821(A) and LSA-R.S. 42:851(A).
The Board, in adopting the resolution defining "retiree," improperly attempted to exclude Spragio and other qualified persons similarly situated from receiving insurance benefits. In so doing, the Board exceeded its authority granted by LSA-R.S. 42:874. Accordingly, that portion of the resolution defining "retiree" inconsistently with the provisions of LSA-R.S. 42:853 is without effect.
These assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 4
Defendant contends that the trial judge erred in not giving retroactive application to Acts 1982, No. 243, as it amended LSA-R.S. 42:821(A) and LSA-R.S. 42:851(A).
The Legislature in its 1982 amendments to LSA-R.S. 42:821(A) and LSA-R.S. 42:851(A) redefined employee and adopted the definition of "retiree" as defined by the rules and regulations of the Board.[8]
*1328 As a general rule, laws are deemed to be prospective unless their language clearly indicates otherwise. LSA-C.C. art. 8; LSA-R.S. 1:2; Green v. Liberty Mut. Ins. Co., 352 So.2d 366 (La.App. 4th Cir.1977) writ denied, 354 So.2d 210 (La.1978). However, the general rules of prospective application apply only to substantive laws as distinguished from merely procedural or remedial laws, which are given retroactive effect in the absence of language showing a contrary intention. Lott v. Haley, 370 So.2d 521 (La.1979); Ardoin v. Hartford Acc. & Indem. Co., 360 So.2d 1331 (La.1978). This jurisprudential rule is itself subject to the exception that procedural and remedial laws are not accorded retroactive effect when such retroactivity would operate to divest a person of a pre-existing right. Lott v. Haley, supra; Orleans Parish Sch. Bd. v. Pittman Construction Co., 261 La. 665, 260 So.2d 661 (1972).
In the case sub judice, the plaintiffs' right to participate in the insurance benefits program vested on Spragio's 55th birthday (August 29, 1981), the day he began drawing a retirement installment. He began "receiving the benefits of retirement" prior to the effective date of the 1982 amendment to LSA-R.S. 42:821(A) and LSA-R.S. 42:851(A) (September 10, 1982). Under the law existing at the time Spragio began receiving retirement benefits, the plaintiffs had the right to participate in the insurance benefits program, and Act 243 of 1982 cannot be applied retroactively to divest them of that right. Additionally, the state, as sovereign, has the undeniable obligation to deal fairly with its citizens, whether they are ordinary citizens or citizen-employees. For the state to act in the manner evidenced in the case sub judice offends commonly accepted notions of fairness and justice.
This assignment of error is without merit.

UNDECIDED ISSUES
Because of our ruling in Assignments of Error Nos. 1-4, we find it unnecessary to address defendant's contentions that the trial judge erred in failing to apply the presumption of validity to administrative enactments and to utilize the proper scope *1329 of judicial review of administrative enactments. We further find it unnecessary to address plaintiffs' contention that LSA-R.S. 42:821(A) and LSA-R.S. 42:851(A), as amended by Acts 1982, No. 243 are unconstitutional. It is the uniform practice of the courts to refrain from deciding the constitutionality of laws until the necessity for such decision arises in the record before the court. Tafaro's Invest. Co. v. Division of Housing Improve., 261 La. 183, 259 So.2d 57 (1972). Since we have disposed of the case on other grounds, we need not and do not determine whether LSA-R.S. 42:821(A) and LSA-R.S. 42:851(A) as amended by Acts 1982, No. 243 are unconstitutional.
For the above reasons, the judgment of the trial court ordering the Board to accept and approve plaintiffs' request for participation in the insurance benefits program is affirmed. Costs of this appeal are to be paid by the Board of Trustees of the State Employees Group Benefits Program in the amount of $542.28.
AFFIRMED.
NOTES
[1] Mr. Spragio had elected to extend the insurance coverage to his spouse, as permitted under the insurance program rules.
[2] Under the provisions of LSA-R.S. 42:571(A), state employees, who have earned the requisite number of years service and who have reached the requisite age, are eligible for retirement benefits.

LSA-R.S. 42:571 provides in pertinent part:
A. Any member shall be eligible for retirement if he has:
(1) Thirty years or more of service, at any age.
(2) Twenty-five years or more of service, at age fifty-five or thereafter.
(3) Ten years or more of service, at age sixty or thereafter.
State employees, who have earned the requisite years of service, are permitted to resign from state service prior to reaching retirement age. However, retirement stipends do not commence until the member attains the requisite age.
[3] Prior to his resignation, Spragio consulted Michael Baumann, an agent in the personnel division of DHHR, to determine his eligibility for insurance coverage upon retirement. Baumann advised him that upon reaching age fifty-five on August 29, 1981, Spragio and his wife would be permitted to re-enroll and again participate in the insurance benefits program.
[4] This court in Louisiana Dept. of Treasury, Etc. v. Williams, 451 So.2d 1308, 1310 (La.App. 1st Cir.1984) recently described the origin of the group benefits program as follows:

On March 3, 1969, Executive Order No. 70 was issued by then Governor John J. McKeithen. Pursuant to this order, the Commissioner of Administration was directed to establish a master group hospital, surgical, major medical and life insurance program for all state employees and to make arrangements for its effective implementation.
Pursuant to this Executive Order, the Commission of Administration did establish a uniform group plan of life and health insurance for state employees....
From 1969 through September of 1979, the State group insurance program was administered by the Division of Administration. Effective September 1, 1979, the administration of the State group insurance program was transferred from the Division of Administration to the Board of Trustees of the State Employees Group Benefits Program.
[5] The Resolution provides in pertinent part:

RESOLUTION
WHEREAS the Board of Trustees of the State Employees Group Benefits Program was created by Act 745 of 1979 and charged with the general administration of all aspects of programs of benefits generally referred to as the State Employees Group Benefits Program; and
WHEREAS, R.S. 42:821 and R.S. 851, as amended by Act 745 of 1979, allows retirees to participate in the State Employees Group Benefits Program; and
WHEREAS, the term "retiree" is not defined in the Act and a clarification of this term is necessary;
THEREFORE, BE IT RESOLVED that for the purpose of determining eligibility to participate in the State Employees Group Benefits Program the term "retiree" shall refer only:
A) To those persons who, prior to retirement, were participating in the State Employees Group Benefits Program and who, at the date of retirement, were not subject to either the three month/one year or one year/two year preexisting condition provisions of the plan and who, upon retirement,
1) were immediately eligible to receive a retirement stipend from the retirement system of a political subdivision or agency whose active members are eligible to participate in the State Employees Group Benefits Program; or
....
B) To such other persons now retired who, on the effective date of this Resolution, are eligible participants in the retirement system of a political subdivision or agency whose active members are eligible to participate in the State Employees Group Benefits Program.
[6] The defendant assigned the following errors:

(1) The trial judge erred in holding the March 19, 1980, guidelines of the Board of Trustees of the State Employees Group Benefits Program, effective May 20, 1980, inconsistent with the provisions of LSA-R.S. 42:853;
(2) The trial court erred in holding that the Board superseded its authority in adopting this March 19, 1980, resolution;
(3) The trial court erred in failing to find LSA-R.S. 42:853 is ambiguous;
(4) The trial court erred in holding that the amendments to LSA-R.S. 42:821 and LSA-R.S. 42:851 by Acts 1982, No. 243, Section 1, were not retroactive.
(5) The trial court erred in failing to apply or recognize the presumption of validity that applies to all enactments of administrative regulations; and
(6) The trial court erred in failing to utilize the proper scope of review of administrative enactments; i.e. whether the enactment is supported by substantial evidence and is not arbitrary or an abuse of discretion.
Although we will not address each of defendant's assignments of error individually, the opinion adequately discusses the issues raised.
[7] See Footnote 5, supra.
[8] LSA-R.S. 42:821(A), after amendment by Acts 1982, No. 243, provided, in part, as follows:

A. The state of Louisiana and each of its governmental and administrative subdivisions, departments, or agencies of the executive, legislative, or judicial branches, and the governing boards and authorities of each state university, college, or each public elementary and secondary school system in this state are authorized to procure contracts of group life and group accidental death and dismemberment insurance covering their respective employees, officials, and department heads, or any class or classes thereof and the dependents of such employees, officials, or department heads or may adopt, administer, or operate or contract for all or a portion of the administration, operation, or both, of a self-funded program for that purpose. Each such contract or self-funded program, the premiums of which are paid in whole or in part with state funds, shall be approved by the Board of Trustees of the State Employees Group Benefits Program. The contribution by the state or any other entity herein enumerated in all cases shall not exceed fifty percent of the total premium out of funds contributed by the state. For purposes of this Section, an employee is defined as: (1) a classified or unclassified state civil service employee; or (2) a retiree, as defined by the rules and regulations of the Board of Trustees of the State Employees Group Benefits Program; or (3) a person who is eligible to receive fifty percent of the insurance premium and receive at least fifty percent of his salary from state or federal funds; or (4) a full-time employee of a school board whose salary is paid entirely from local school board funds if the school board elects to pay one-half of the insurance premium for the employee; or (5) a person not otherwise eligible as an employee who works at least thirty hours per week on a regular basis; (6) a district supervisor or a district employee or a retired district supervisor or a retired district employee of a soil and water conservation district. Any person who does not qualify under this definition shall be permitted to remain in the group plan in which he is participating on September 10, 1982 for a period not to exceed one year or no later than September 10, 1983. (Emphasis added) LSA-R.S. 42:851(A), after amendment by Acts 1982, No. 243, provided, in part, as follows:
A. The state of Louisiana and each of its governmental and administrative subdivisions, departments, or agencies of the executive, legislative, or judicial branches, and the governing boards and authorities of each state university, college, or each public elementary and secondary school system in this state are authorized to procure contracts of insurance covering their respective employees, officials, and department heads, or any class or classes thereof and the dependents of such employees, officials, or department heads under a policy or policies of group health, accident, accidental death and dismemberment, and hospital, surgical, or medical expense benefits, or may adopt, administer, or operate or contract for all or a portion of the administration, operation, or both, of a self-funded program for that purpose. Each such contract or self-funded program, the premiums of which are paid in whole or part by state funds, shall be approved by the Board of Trustees of the State Employees Group Benefits Program. The contribution of the state or any other entity herein enumerated in all cases shall not exceed fifty percent of the total premium out of funds contributed by the state. For purposes of this Section, an employee is defined as: (1) a classified or unclassified state civil service employee; (2) a retiree as defined by the rules and regulations of the Board of Trustees of the State Employees Group Benefits Program; or (3) a person who is eligible to receive fifty percent of the insurance premium and receive at least fifty percent of his salary from state or federal funds; or (4) a full-time employee of a school board whose salary is paid entirely from local school board funds if the school board elects to pay one-half of the insurance premium for the employee; or (5) a person not otherwise eligible as an employee who works at least thirty hours per week on a regular basis; (6) a district supervisor or a district employee or a retired district supervisor or a retired district employee of a soil and water conservation district. Any person who does not qualify under this definition shall be permitted to remain in the group plan in which he is participating on September 10, 1982 for a period not to exceed one year or no later than September 10, 1983. (Emphasis added)