WOODARD, Judge.
This appeal arises out of a suit for declaratory judgment in which plaintiffs seek a declaration that they are the owners of mineral servitudes encumbering land now owned by defendants. The issue on appeal is whether the mineral rights, which were reserved when the land was expropriated by the federal government, were subject to prescription of nonuse when the land subsequently returned to private ownership.
*37 FACTS
The facts of this case are not in dispute. Plaintiffs or their ancestors-in-title owned land in Iberia Parish which the federal government acquired in an expropriation suit by judgment of condemnation rendered October 3, 1956. The judgment excepted from expropriation all “oil, gas, and other hydrocarbons” affecting the property. On October 7, 1969, the federal government conveyed a portion of the expropriated land to Gulf Coast Land and Development Corporation which subdivided the land and sold it to defendants. There have been no drilling operations on the land from October 3, 1956 through 1988.
On July 14, 1988, plaintiffs filed a petition for declaratory judgment, asking for continued recognition of the mineral rights reserved in the judgment and a determination that the rights are not subject to prescription. Defendants answered the petition and reconvened, alleging that they are the current owners of the mineral rights.
The trial judge held that the mineral rights reserved in the judgment of condemnation were imprescriptible, and declared plaintiffs the owners of the mineral rights. Defendants appeal asserting the following assignments of error: (1) the trial court erred in admitting and relying on the testimony of J. Brutus Viator, given that the judgment of condemnation is the best evidence of its contents; (2) the trial court erred in finding that the mineral servitudes established by the judgment were created by contractual reservation rather than by operation of law; and (3) the trial court erred in concluding that the judgment established mineral servitudes that would remain imprescriptible ad infinitum, even when the land burdened by the servitudes returned to private ownership. We affirm.
LAW
Defendants' first assignment of error concerns the trial court’s reliance on the testimony of J. Brutus Viator, who testified as to the federal government’s intentions regarding the mineral rights. We find no evidence that the trial judge relied on Mr. Viator’s testimony in reaching his decision. In fact, it is evident from his written reasons for judgment that he relied on Act 315 of 1940, in effect at the time of the expropriation, to conclude that the mineral rights were imprescriptible.
In their second assignment of error, defendants allege that the trial court erred in finding that the mineral servitudes were created by contractual reservation. We fail to see where the trial court found that the mineral servitudes were created by contractual reservation. The trial judge specifically states in his written reasons for judgment that the mineral rights were reserved in the judgment of condemnation. These assignments of error are therefore without merit.
ACT 315 OF 1940
Defendants’ third assignment of error sets forth the issue we must decide; namely, whether prescription of nonuse began to accrue when the land expropriated by the federal government returned to private ownership.
The law in effect at the time the land was expropriated was La.R.S. 9:5806 (Act 315 of 1940), which provided as follows:
When land is acquired by conventional deed or contract, condemnation or expropriation proceedings by the United States of America, or any of its subdivisions or agencies, from any person, firm or corporation, and by the act of acquisition, verdict or judgment, oil, gas, and/or other minerals or royalties are reserved, or the land so required is by the act of acquisition conveyed subject to a prior sale or reservation of oil, gas, and/or other minerals or royalties, still in force and effect, said rights so reserved or previously sold shall be imprescriptable.
The statute was silent regarding the application of the rules of prescription if the land returned to private ownership; it simply stated that the mineral rights were imprescriptible. Black’s Law Dictionary 681 (West, 5th ed. 1979) defines impre-scriptible rights as “[s]uch rights as a person may use or not, at pleasure, since they cannot be lost to him by the claims of another founded on prescription.”
*38 The trial judge concluded that plaintiffs’ mineral rights were imprescrip-tible, ad infinitum. This conclusion is supported by the plain language of the statute. When a statute is clear and unambiguous, it must be given effect as written. Spragio v. Board of Trustees, 468 So.2d 1323 (La.App. 1 Cir.1985), writ denied, 472 So.2d 32 (La.1985). Furthermore, it is presumed that the legislature understood the meaning and effect of the words used in a statute, and that it intended to use those words. Spragio, supra.
Based upon the foregoing, we find no error in the trial court’s determination that plaintiffs’ mineral rights are impre-scriptible.
RETROACTIVITY OF LA.R.S. 31:149
Defendants next argue that Act 315 of 1940 is not the controlling law here. They submit that the current law regarding expropriation of land and reservation of mineral rights, found at La.R.S. 31:149, should be applied retroactively. The legislature specifically addresses the running of prescription when expropriated land returns to private ownership, and La.R.S. 31:149 states in pertinent part as follows:
When land is acquired from any person by the United States or the State of Louisiana, ... and by the act of acquisition ... a mineral right otherwise subject to the prescription of non use is reserved, the prescription of non use shall not run against the right so long as title to the land remains in the government ...
If the land or any part thereof is transferred by the government or subdivision ... to a private owner, the prescription of non use shall apply as in the usual case ...
Defendants argue that because this is a statute regarding prescription, it should be applied retroactively. However, a statute cannot be applied retroactively when it will divest already vested rights. Lott v. Haley, 370 So.2d 521 (La.1979). Furthermore, the Louisiana Mineral Code provides at La.R.S. 31:214 as follows:
The provisions of this Code shall apply to all mineral rights, including those existing on the effective date hereof; but no provision may be applied to divest already vested rights or to impair the obligation of contracts.
A right is vested when, “the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. The right must be absolute, complete and unconditional, independent of a contingency, and a mere expectancy of future benefit or contingent interest in property ... does not constitute a vested right.” Tennant v. Russell, 214 La. 1046, 39 So.2d 726 (La.1949). Because Act 315 of 1940 rendered plaintiffs’ servitudes imprescriptible, plaintiffs currently have the absolute right to explore for and produce the minerals on defendants’ land. We will not apply La. R.S. 31:149 retroactively and divest plaintiffs of this vested right of servitude.
We therefore find the trial court was correct in concluding that plaintiffs are the owners of the mineral rights at issue herein, and that these mineral rights are impre-scriptible. The judgment of the trial court is affirmed. Costs of this appeal are assessed to defendants-appellants.
AFFIRMED.