MOORE, J.
 

 | j Nancy Council appeals a judgment sustaining an exception of no right of action and dismissing her workers’ compensation claim against her alleged employer, FedEx Custom Critical. We affirm.
 

 Factual and Procedural Background
 

 Ms. Council and her husband had worked in trucking since the late 1980s. In 2007, they called a recruiter for FedEx Custom Critical (“FedEx”) who gave them names of independent contractors who supplied trucks and drivers for FedEx. Ms. Council testified that she called SB Transports, one of the contractors, who hired them. They drove to Atlanta, Georgia, to pick up a truck, and then to Akron, Ohio, to attend an orientation conducted by FedEx, took a physical and drug tests, and received a certificate.
 

 The Councils, however, never signed any contract with FedEx; instead, they signed an “Independent Contractor Agreement” with SB Transports, designating them as independent contractors and obligating them to SB Transports’ “Agreement for Leased Equipment and Independent Contractor Services” with FedEx. The latter agreement stated that neither SB Transports nor any of its employees or agents shall be considered employees of FedEx.
 

 Ms. Council testified that her truck bore the FedEx logo, she had to wear a FedEx shirt, was in constant radio contact with FedEx, drove for nobody but FedEx, received “suggested routes” for all loads, and although she had the option to decline any load, she understood that if she declined three in a row, SB Transports would terminate her.
 

 ]2On January 15, 2008, Ms. Council and her husband were loading their truck with electronics equipment when she injured her back. She testified that as a result of this injury, she will never be able to drive a truck again.
 
 [1]
 

 In March 2008, she filed this disputed claim for compensation against FedEx and SB Transports. Both defendants filed exceptions of “no cause of action and/or no right of action,” and FedEx’s exception was tried in May 2009. Ms. Council testified as outlined above; also, the parties
 
 *463
 
 introduced paperwork documenting their relations. The WCJ found the overall facts suggested an employment relationship, so he denied FedEx’s exception.
 

 Less than two weeks later, FedEx filed a motion for new trial, urging that its counsel “just became aware of a directly applicable and dispositive statute,” La. R.S. 28:1021(10), which was not previously brought to the WCJ’s attention. Paragraph (10) was added to the “terms defined” section in 2004 and provides (with emphasis added):
 

 (10) “Owner operator” means a person who provides trucking transportation services under written contract to a common carrier, contract carrier, or exempt haulers which transportation services include the lease of equipment or a driver to the common carrier, contract carrier, or exempt hauler. An owner operator, and the drivers provided by an owner operator,
 
 are not employees of any such common earner or exempt hauler
 
 for the purposes of this Chapter
 
 if the owner operator has entered into a written agreement with the carrier or hauler that evidences a relationship in which the owner operator identifies itself as an independent contractor.
 
 For purposes of this Chapter, owner operator does not include an individual driver who purchases his equipment from the carrier or hauler, and then directly leases the equipment back to the carrier or hauler with the purchasing driver.
 

 IsFedEx argued that Ms. Council has no contract with FedEx, only one with SB Transports identifying her as an independent contractor; and SB Transports had a contract with FedEx stating that none of its employees or agents were employees of FedEx. FedEx concluded that R.S. 23:1021(10) defeated Ms. Council’s right of action.
 

 Ms. Council opposed the new trial, urging that a literal reading of § 1021(10) would overturn the reality of the relationship and open the door to fraudulent abuse by carriers who operated strictly through independent contractor agreements. Citing
 
 Rush v. Employers Nat’l Ins. Co.,
 
 598 So.2d 603 (La.App. 4 Cir.),
 
 writ denied,
 
 605 So.2d 1364 (1992), and
 
 Fuller v. U.S. Aircraft Ins. Group,
 
 530 So.2d 1282 (La.App. 2 Cir.),
 
 writ denied,
 
 534 So.2d 444 (1988),
 
 cert. denied,
 
 490 U.S. 1046, 109 S.Ct. 1954, 104 L.Ed.2d 424 (1989), she argued that the “right of control” analysis fully supported the WCJ’s finding of an employment relationship. However, after a hearing in November 2009, the WCJ granted the new trial and asked for additional briefing and evidence.
 

 At the new trial in March 2010, the successor WCJ
 
 [2]
 
 heard the arguments of counsel and sustained FedEx’s exception, finding that § 1021(10) was clear, unambiguous, and applied to this claim. He rendered judgment dismissing FedEx with prejudice; Ms. Council took this appeal.
 

 The Parties’ Positions
 

 Ms. Council raises two assignments of error: (1) the WCJ erred in sustaining FedEx’s exception of no right of action, and (2) the WCJ erred in Lbasing its decision solely on the strict language of R.S. 23:1021(10), giving no consideration to FedEx’s conduct, interaction and relationship with the claimant driver. She quotes the statute and concedes that, literally applied, it would exclude her claim. She argues, however, that if the common carrier obtains independent contractor agreements with its drivers, then “no action or conduct whatsoever by the common carrier would
 
 *464
 
 result in an employer/ employee relationship with the driver.” She reiterates the “right of control” analysis set out in
 
 Rush, Fuller,
 
 and more recently in
 
 Elmore v. Kelly,
 
 39,800 (La.App. 2 Cir. 7/29/05), 909 So.2d 36, and interprets the facts to show that FedEx exercised almost total control over her work performance, making her an employee entitled to compensation. Finally, she suggests it is error for the WCJ to place so much emphasis on the designations in the contracts; she contends the parties’ labels are not dispositive if their actual conduct establishes a different relationship. In support, she cites the California case of
 
 Estrada v. FedEx Ground Package Syst.,
 
 64 Cal.Rptr.3d 327, 154 Cal.App.4th 1 (2007).
 

 FedEx urges that the court should not disregard a specific, controlling and directly applicable statute, R.S. 23:1021(10), in favor of an analysis based on general principles of case law issued prior to the enactment of the statute. It shows that the superior source of law is the statute itself, La. C.C. arts. 1, 3, and that § 1021(1) is directly applicable and precludes Ms. Council from being considered an employee of FedEx for purposes of workers’ compensation. It contends that the jurisprudence cited by Ms. Council either predated the enactment of § 1021(10) or failed to mention it, Land argues that
 
 Estrada
 
 is not persuasive because,
 
 inter alia,
 
 California had no statutory equivalent of § 1021(10). It urges affirmance.
 

 Discussion
 

 The sources of law are legislation and custom. La. C.C. art. 1. Custom may not abrogate legislation. La. C.C. art. 3. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9;
 
 In re Succession of Faget,
 
 2010-0188 (La.11/30/10), 53 So.3d 414. Courts assume that in enacting a new law, the legislature was aware of the existing law on the same subject.
 
 Id.
 
 Courts do not rule on the social wisdom of statutes or their workability in practice.
 
 State v. Smith,
 
 99-0606 (La.7/6/00), 766 So.2d 501.
 

 Notably, Ms. Council has not alleged that R.S. 23:1021(10) is unconstitutional.
 
 [3]
 
 Rather, she asks the court to disregard it because it reverses the jurisprudence. We find, however, that § 1021(10) is clear, unambiguous and addresses this situation precisely. Ms. Council meets the definition of an “owner operator” in that she provided “trucking transportation services under written contract to a common carrier, contract carrier * * * which transportation services include the lease of equipment or a driver[.]” She signed an “Independent Contractor Agreement” with SB Transports, clearly identifying her as an independent contractor and stating, | fi“All parties agree at all times to abide by the Agreement for Leased Equipment and Independent Contractor Services as required by FedEx Custom Critical[.]” SB Transports previously executed an “Agreement for Leased Equipment and Independent Contractor Services” with FedEx, which stated in part:
 

 The intention of the parties to this Agreement is to establish a relationship between Owner [SB Transports] and [FedEx] through which Owner, as an independent contractor, (1) leases a vehicle to [FedEx] and (2) renders certain
 
 *465
 
 related services to facilitate the transportation of critical shipments of goods to and from [FedEx’s] customers * * *. Neither Owner nor any of its employees or agents shall be considered to be employees of [FedEx] or [FedEx’s] customers at any time, under any circumstances, for any purpose whatsoever, and nothing in this Agreement shall be construed as inconsistent with that relationship.
 

 These passages obviously satisfy the second sentence of the statute: “An owner operator, and the drivers provided by an owner operator, are not employees of any such common carrier * * * for purposes of this Chapter if the owner operator has entered into a written agreement with the carrier * * * that evidences a relationship in which the owner operator identified itself as an independent contractor.” In short, the WCJ was neither factually nor legally erroneous in applying § 1021(10) to find that Ms. Council is not entitled to relief under the workers’ compensation law.
 

 We are sensitive to the arguments of counsel and would agree that § 1021(10) now elevates one evidentiary item — a contract designating a trucker as an independent contractor — to exclusive status, disregarding the panoply of factors normally consulted when a court must decide whether a relationship is employment or an independent contract. Traditionally, the | parties’ designation or belief was virtually irrelevant when balanced against the right of control and the financial dynamic of the relationship.
 
 Fuller v. U.S. Aircraft Ins. Group, supra; Estrada v. FedEx Ground Package Syst., supra.
 
 We also cannot dismiss the possibility that unscrupulous common carriers could skirt their obligations under the workers’ compensation law by executing contracts that comply with § 1021(10) and setting up shadowy middlemen as direct employers.
 
 [4]
 
 However, we must assume that in enacting § 1021(10) the legislature intended to override prior law with respect to contract truckers.
 
 In re Succession of Faget, supra.
 
 We will not rule on the social wisdom of the statute or its workability in practice.
 
 State v. Smith, supra.
 
 The statute governs Ms. Council’s claim and the WCJ did not err in applying it to dismiss the claim.
 

 Conclusion
 

 For the reasons expressed, the judgment is affirmed. Costs are to be paid by Ms. Council in accordance with La. C.C.P. art. 5186.
 

 AFFIRMED.
 

 [1]
 

 . According to FedEx, Ms. Council had insurance coverage for work-related accidents through a "Group Independent Contractor Work Accident Insurance Certificate” and that as of July 2008 she had drawn nearly $10,000 on this policy. R.p. 42.
 

 [2]
 

 . WCJ Ryan Gatti had initially denied the exception of no right of action and granted the motion for new trial; successor WCJ Carey Holliday presided over the new trial.
 

 [3]
 

 . The statute appears to be a purely economic regulation which draws no prohibited or suspect distinctions and does not infringe on fundamental rights guaranteed by La. Const. Art. I, § 3, or the 14th Amendment.
 
 Board of Directors v. All Taxpayers,
 
 2005-2298 (La.9/6/06), 938 So.2d 11.
 

 [4]
 

 . We also note that "Appendix I” to the "Agreement for Leased Equipment and Independent Contractor Services” obligated SB Transports to carry stated amounts of disability, medical, accidental death, and contingent workers' compensation coverage, and Ms. Council has not alleged that SB Transports failed to comply.