MOORE, J.
| j Ruby and Son Hui Yates, their assign-ee WJD Carbon (collectively, “Yates”) and Petrohawk Properties LP each appeal a partial summary judgment in favor of Randy and Lisa Marston and Rex and Sandra Young, declaring that Marston owns one-half of the mineral servitude, and Young owns the other half subject to a one-quarter royalty interest in favor of Yates, affecting a tract of land in Red River Parish. For the reasons expressed, we affirm.

Factual Background

The tract, the 1,581-acre Ashland-Cres-cent Plantation, had been in Marston’s family for several generations. Pursuant to a testamentary trust, Premier Bank held legal title to the tract in the 1990s. In January 1995, the trust sold the tract to Young, but reserved one-half mineral rights. In 1996, the trust terminated, conveying its one-half mineral servitude to Marston. In 1997, Young sold the tract to Yates, reserving (on top of Marston’s one-half mineral servitude) one-half of executive rights and one-fourth of royalty rights. All these sales were matters of public record.
Yates sold most of the tract to the Nature Conservancy in December 2002 for $1.5 million (“the Conservancy deed”). The Conservancy deed recited:
Grantors [Yates] hereby expressly reserve unto themselves, and their heirs, successors and assigns, in perpetuity pursuant to and will the benefit of La. R.S. 31:149.1 * * * all of the subsurface oil, gas and liquid hydrocarbons in, on or under the property, including all executive rights and reversionary rights related thereto[.] To evidence compliance with the requirements of La. R.S. 31:149.1, attached hereto * * * is a certificate * * * certifying that Grantee [the Nature Conservancy] is a national, nonprofit land conservation ^organization.
In August 2003, the Nature Conservancy sold the tract to the United States by *675 general warranty deed. At this time, there was no mineral exploration or operation either on the tract or on units that included it.
In March 2008, Yates granted an oil, gas and mineral lease to Delta Lands; two months later, Delta Lands assigned lessee’s rights to Petrohawk. Later, Yates transferred whatever mineral rights he might have had to his subsidiary, WJD Carbon. In late 2008, Petrohawk began drilling seven wells in the Haynesville Shale, on units that included the tract. Apparently, Petrohawk paid all bonuses and royalties to Yates.
Yates filed this suit against Marston in October 2009, in essence to quiet title and obtain judgment declaring that Yates owned the mineral rights to the tract. Marston reconvened, asserting the servitude rights he reserved in the 1995 deed. In early 2010, Marston amended his recon-vention to join WJD, Yates’s assignee, and Petrohawk, Yates’s lessee, as defendants in reconvention. Then Young intervened, aligning himself with Marston, asserting the servitude rights he reserved in the 1997 deed.

The Statutes and Motion for Summary Judgment

Marston and Young filed the instant motion for partial summary judgment on the issue of imprescriptibility. At the time of the Conservancy deed (2002) and the U.S. warranty deed (2003), an article of the Mineral Code, La. R.S. 81:149.1, provided (in pertinent part, with emphasis added):
§ 149.1. Mineral rights imprescrip-tible when reserved in transfers of land to state or national, nonprofit land conservation organization
IsA. (1) When land is acquired from any person by an organization certified by the secretary of the Department of Natural Resources to be a state or national, nonprofit land conservation organization by conventional deed, donation, or other contract and by the act of acquisition, a mineral right otherwise subject to the prescription of nonuse is reserved, the prescription of nonuse shall not run against the mineral right so long as title to the land remains with the state or national, nonprofit land conservation organization.
(2) The state or national, nonprofit land conservation organization is only authorized to convey the property involved to another state or national, nonprofit land conservation organization, to the state, or to the federal government. If the land, or any part thereof, is transferred by the state or national, nonprofit land conservation organization, the state, or the federal government, the prescription of nonuse shall not apply.
The legislature repealed Art. 149.1 in 2004; simultaneously it amended La. R.S. 31:149, providing (in pertinent part, with emphasis added):
§ 149. Mineral rights reserved from acquisition of land by governments or agencies thereof imprescriptible
[[Image here]]
B. When land is acquired from any person by an acquiring authority through act of sale, exchange, donation, or other contract, * * * and a mineral right subject to the prescription of non-use is reserved in the instrument * * * by which the land is acquired, prescription of the mineral rights is interrupted as long as title to the land remains with the acquiring authority, or any successor that is also an acquiring authority. The instrument * * * shall reflect the intent to reserve or exclude the mineral rights from the acquisition and their impres-criptibility as authorized under the provisions of this Section and shall be re *676 corded in the conveyance records of the parish in which the land is located.
[[Image here]]
D. If a mineral right subject to prescription has already been established over land at the time it is acquired by an acquiring authority, the mineral right shall continue to be subject to the prescription of nonuse to the same extent as if the acquiring authority had not acquired the land. Upon the prescription or other extinction of such mineral right, the transferor of the land shall without further action or agreement become vested with a mineral right identical to that ^extinguished, if (1) the instrument * * * by which the land was acquired expressly reserves or purports to reserve the mineral right to the trans-feror, whether or not the transferor then acqually owns the mineral right that is reserved, and (2) the land is still owned by an acquiring authority at the time of extinguishment.
Marston and Young argued that by a plain reading, Art. 149.1 A(l) (hereinafter, “Subsec. A(l)”) created a special rule for conveyances to conservation organizations whereby all outstanding mineral rights were made imprescriptible. Also, the Nature Conservancy’s later transfer of the tract to the U.S. activated the final clause of Subsec. A(2), “the prescription of non-use shall not apply.” They argued that the 2004 amendment to Art. 149 could not be applied retroactively as this would divest them of a substantive right, specifically, the imprescriptibility of a mineral right as recognized in Heirs of Viator v. TriParish Investors Ltd., 618 So.2d 36 (La. App. 3 Cir.), writ denied, 625 So.2d 167 (1993). Alternatively, they argued that if the 2004 amendment revoked their impre-scriptible' right, it restarted a 10-year period of nonuse during which Petrohawk’s operations began. They sought judgment declaring that (1) Marston owned a one-half mineral servitude in the tract, inclusive of royalty and executive rights, (2) Young owned the other one-half of executive rights, and one-fourth of royalty rights, (3) the Delta lease was null and void, and (4) Yates’s conveyance to WJD Carbon was null and void except as to the one-fourth mineral royalty retained by Yates. They also demanded an accounting for their proportionate share of all mineral production attributable to the tract.
Petrohawk and Yates opposed the motion. Petrohawk contended that Art. 149.1 conferred the benefit of imprescriptibility only on the person ^transferring the land to a conservation organization, not on anyone else. It showed that the Conservancy deed expressly reserved the mineral servitude “unto themselves,” meaning only Yates; and Subsec. A(l) referred to “the mineral right,” meaning only the particular right expressly reserved. Further, revised Art. 149 applied retroactively, as it changed only a prescriptive period and did not affect any substantive right. Producers Oil & Gas Co. v. Nix, 488 So.2d 1099 (La.App. 2 Cir.), writ denied, 493 So.2d 641 (1986); Anadarko Prod. Co. v. Caddo Parish School Bd., 455 So.2d 699 (La.App. 2 Cir.), writ denied, 460 So.2d 610 (1984). The only case to find a substantive right, Heirs of Viator, was not really apposite and has been criticized as “troublesome.” Patrick Martin, Recent Developments: Mineral Rights, 54 La. L.Rev. 747, 755 (1994). Finally, amended Art. 149 did not interrupt prescription but only suspended it from the date of the Conservancy deed until the 2004 repeal; nonuse had accrued by the time Petrohawk began drilling in 2008.
Yates reiterated many of Petrohawk’s points, adding that Marston and Young’s position disregarded the policy of former Art. 149.1, which was to encourage dona *677 tions of land to conservation organizations by allowing the immediate transferor to retain ,Jhis minerals without risk of nonuse. Prior transferors had no surface rights to donate, and hence should not reap the benefit of imprescriptibility.

Action of the District Court

After a hearing in February 2012, the court rendered an opinion quoting the Conservancy deed and citing Art. 149.1. The court conceded that had Yates not made the reservation in the Conservancy deed, Marston | fiand Young’s mineral interest would have prescribed. At the time of the reservation, however, Yates did not own all the mineral interest. The court concluded that Art. 149.1 “cannot be construed to give Yates more of an interest than they had at the time of the execution of the deed,” and thus the reservation made all mineral owners’ rights impre-scriptible. The court rendered partial summary judgment as prayed for.
Petrohawk and Yates have appealed separately.

The Parties’ Positions

Yates urges, by one assignment of error, that the court erred in holding that the 2002 mineral reservation by Yates in the Conservancy deed rendered imprescrip-tible the 1995 and 1997 mineral servitudes of Marston and Young, respectively. First, Yates argues that Art. 149, not Art. 149.1, should apply: Art. 149 B makes any reserved mineral right imprescriptible as long as the land remained with the acquiring authority, the Nature Conservancy, and Art. 149 D vests in Yates the servi-tudes of Marston and Young when they prescribed. Even if Art. 149.1 applies, Yates argues, it refers only to “a mineral right otherwise subject to the prescription of nonuse” that is “reserved” in the “act of acquisition,” and can thus affect only Yates’s specific reservation in the Conservancy deed. Yates contrasts Art. 149.1 with a previous statute, La. R.S. 9:5806 A,[1] which established imprescriptibility of mineral rights “subject to a prior sale or reservation” when property is transferred to the U.S., but argues that no subsequent statute, including Art. 149.1, has applied such a sweeping rule of 17imprescriptibility. Yates also argues that extending impres-criptibility to prior transferors is an “absurd” consequence; the goal of Art. 149.1 was to promote sales and donations to conservation organizations by promising the transferor that he could retain a valuable mineral interest, and this goal is not served by extending the promise to prior owners who are not selling at reduced prices for conservation purposes. Yates also argues that even though he did not own, and could not transfer, full mineral rights when he conveyed the tract to the Nature Conservancy, he still could reserve his reversionary interest in the minerals, i.e., that interest that would revert to him when Marston and Young’s servitudes prescribed for nonuse. Yates concludes that Art. 149.1, properly interpreted, mandates reversal, and that Art. 149, applied retroactively, also mandates reversal.
Petrohawk concedes that this is a case of first impression, as no jurisprudence interprets Art. 149.1, but argues with Yates that the article exempts from prescription only the mineral right reserved in the act of acquisition. Notably, the Conservancy deed contained no reservation in favor of Marston or Young, only in favor of Yates. Petrohawk urges that Subsec. A(2)’s unrestricted reference to “the prescription of nonuse” did not confer endless *678 exemption from prescription but merely addressed which entities may receive property without defeating the exemption. With Yates, Petrohawk argues it makes “no sense to extend the mineral interest of one who has nothing to do with the transfer and even less so if the land is subsequently transferred to the government.” With Yates, Petrohawk also argues that Art. 149 governs the case, applies retroactively, and mandates reversal.
|sMarston and Young respond that at the time of the Conservancy and U.S. warranty deeds, they “unquestionably” held a majority of the mineral rights, which were not prescribed; Art. 149.1 barred these rights from prescribing after the Conservancy and U.S. acquired title. In effect, the 2002 and 2003 deeds “froze” their mineral rights, and nothing in repealed Art. 149.1 or in revised Art. 149 excludes the rights of prior servitude owners from imprescriptibility in this situation. Further, the 2004 amendment does not specify retroactive application, and it cannot be applied to divest prescriptive rights, as statutory imprescriptibility of a mineral lease is indeed a vested right, Heirs of Viator v. Tri-Parish Investors, supra. In the alternative, even if Art. 149 applies, it merely started a new 10-year period which was interrupted by Petrohawk’s exploration activities. Marston and Young conclude that the court should not resort to equity, as a plain reading of Art. 149.1 will suffice, but if equity is considered, it flows in their own direction: both Yates and Petrohawk are charged with knowing the law and what is contained in the public records; both received ample cash consideration; Yates’s position is a “naked desire to appropriate all mineral rights to himself’; and Petrohawk is always entitled to recoup its investment under La. R.S,. 31:10 A(2)(b)(iii). They urge affirmance.[2]

General Principles

The starting point for interpretation of any statute is the language of | ¡¡the statute itself. Rando v. Anco Insulations Inc., 2008-1163 (La.5/22/09), 16 So.3d 1065. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9; Succession of Faget, 2010-0188 (La.11/30/10), 53 So.3d 414. The words of a law must be given their generally prevailing meaning. La. C.C. art. 11; Rando v. Anco Insulations, supra. When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La. C.C. art. 10; Rando v. Anco Insula-tions, supra. Courts assume that in enacting a new law, the legislature was aware of existing law on the same subject. Succession of Faget, supra; Council v. FedEx Custom Critical Inc., 46,558 (La.App. 2 Cir. 9/21/11), 73 So.3d 461, writ denied, 2011-2332 (La.12/2/11), 76 So.3d 1178.
When summary judgment is granted in the context of statutory interpretation, there are no material issues of fact in dispute and the sole issue before the court is a question of law as to the correct interpretation of the statute at issue. State v. Louisiana Land & Exploration *679 Co., 2012-0884 (La.1/30/18), 110 So.3d 1088.
The owner of land burdened by a mineral right or rights and the owner of a mineral right must exercise their respective rights with reasonable regard for those of the other. La. R.S. 31:11; Walton v. Burns, 47,388 (La.App. 2 Cir. 1/16/13), — So.3d-, 2013 WL 163739. The expectancy of a landowner in the extinction of an outstanding mineral servitude cannot be conveyed or reserved directly or indirectly. La. R.S. 31:76; Hicks v. Clark, 225 La. 133, 72 So.2d 322 (1954). The provisions of the Mineral Code apply to all mineral rights, including those existing on its effective date, but no provision may be applied to divest already vested rights or to impair the obligation of contracts. La. R.S. 31:214; Producers Oil & Gas v. Nix, supra.
No section of the Revised Statutes is retroactive unless it is expressly so stated. La. R.S. 1:12. If the legislature expressed in the enactment its intent regarding retroactive or prospective application, judicial inquiry is at an end. M.J. Farms Ltd. v. Exxon Mobil Corp., 2007-2371 (La.7/1/08), 998 So.2d 16. Absent legislative expression, procedural and interpretive laws apply both prospectively and retroactively, while substantive laws apply prospectively only. La. C.C. art. 6. However, even a substantive law may not be applied retroactively if so doing would impair contractual obligations or disturb vested rights. M.J. Farms Ltd. v. Exxon Mobil, supra, and citations therein.

Discussion

On close examination, we find that Sub-sec. A(l) was indeed ambiguous. It provided that when land is acquired by a conservation organization, and “by the act of acquisition, a mineral right otherwise subject to the prescription of nonuse is reserved, the prescription of nonuse shall not run against the mineral right ” as long as title remains with the conservation organization. In the second instance, the mineral right (definite article) appears to relate to the first, a mineral right (indefinite), but is not necessarily restricted to the first only; this would have been achieved by using a modifying clause, “the mineral right so reserved.” In |nother words, Subsec. A(l) suggested that only the mineral right specifically reserved in the act of acquisition was exempt from the prescription of nonuse, but did not mandate this reading. It must therefore be interpreted as having the meaning that best conforms to the purpose of the law.
Other provisions of the Mineral Code express the purpose of the law. According to R.S. 31:11, the owner of land burdened by a mineral right or rights (such as Yates) and the owner of a mineral right (such as Marston and Young) must exercise their respective rights with reasonable regard for those of the other. Yates conveyed the tract to the Nature Conservancy, purporting to reserve only his own mineral servitude, and yet at the time Marston and Young still owned significant mineral interests in the tract. The reservation appears to be without reasonable regard for Marston and Young’s rights. Moreover, R.S. 31:76 provides that the expectancy of a landowner (such as Yates) in the extinction of an outstanding mineral servitude (such as the interests held by Marston and Young) cannot be reserved directly or indirectly. This principle negates Yates’s position that he could reserve this “reversionary right” in the tract. If such was his unstated intent, then it would be an impermissible attempt to reserve the expectation that Marston and Young’s rights would prescribe for nonuse. Hicks v. Clark, supra. These provisions, Arts. 11 and 76, support the view that *680 when Subsee. A(l) exempted “the mineral right” from the prescription of nonuse, it was exempting not only the right expressly reserved by the seller but any outstanding mineral interest affecting the property.
Moreover, the legislative history of Art. 149.1 supports this reading. Starting in 1938, Louisiana law declared that if a landowner transferred his 112Iand to a governmental entity for flood control purposes, he could retain his mineral interest in the land and such interest was not subject to the prescription of nonuse. Guy E. Wall, Imprescriptible Mineral Interests in Louisiana, 42 La. L.Rev. 123 (1981), and citations therein. The Mineral Code, which took effect on January 1, 1975, replaced prior statutes with Articles 149, 150 and 151, applicable to “condemnation or appropriation proceedings.” Of these, Art. 150 expressly excluded “then outstanding mineral rights subject to such prescription” from the special rule of imprescriptibility. However, in 1983, the legislature added Art. 149.1, which, pertinent to the instant case, made two major changes: it extended the exemption from prescription of non-use to acquisitions by conservation organizations, and it stated that this form of prescription shall not run “so long as title to the land remains with” the conservation organization. Notably, Art. 149.1 did not replicate Art. 150’s reference to “then outstanding mineral rights” which would remain subject to the prescription of nonuse. This critical omission from Art. 149.1 shows a legislative intent to protect outstanding mineral interests when land is acquired by a conservation organization.
Article 149.1 remained on the books until 2004, when the legislature repealed it, along with Arts. 150 and 151, and replaced them with a revised Art. 149. La. Acts 2004, No. 191. Notably, revised Art. 149 D retains Art. 150’s general idea by stating that if a mineral right has “already been established over the land” at the time of the acquisition, then “the mineral right shall continue to be subject to the prescription of nonuse[J” For this reason, Revision Comment (a) notes that revised Art. 149 is “like its | ^predecessors,” but we find it significant that the legislature chose language that suppressed the special concept of imprescriptibility that it had previously extended in Art. 149.1. This supports the view that prior to 2004, outstanding mineral rights were entitled to protection when the land was acquired by a conservation organization.
Finally, we note that Subsec. A(2) stated that if the land was later transferred by the conservation organization to another conservation organization or to a governmental entity, “the prescription of nonuse shall not apply.” This provision supports the broad concept of exemption from prescription that the legislature suppressed in 2004.
In short, we find that Art. 149.1 provided that prescription of nonuse did not apply to outstanding mineral rights when the property was acquired by a conservation organization by an act that reserved mineral rights.
Yates and Petrohawk strongly contend that even if Art. 149.1 exempted outstanding mineral rights like Marston and Young’s from the prescription of nonuse, the 2004 repeal of that article and enactment of revised Art. 149 abolished the exemption. Marston and Young concede that if the case were governed by revised Art. 149, their interests would have prescribed. Thus, the issue is whether the 2004 amendments were retroactive.
We note initially that La. Acts 2004, No. 919, which repealed Art. 149.1 and revised Art. 149, states that its provisions “shall become effective on August 1, 2004,” with no indication of retroactivity. At first *681 glance, Act 919 appears to affect only a prescriptive period, thus making it procedural and subject to both retroactive and prospective application. However, the | prescription of nonuse extinguishes a real right other than ownership. La. C.C. art. 3448. Thus it is distinct from the liberative prescriptive, which merely bars actions as a result of inaction for a period of time. La. C.C. art. 8447. On the strength of Art. 149.1, Marston and Young had the absolute right to produce the minerals on the tract. Heirs of Viator v. Tri-Parish Investors, supra. A change from statutory imprescriptibility of a mineral right to the standard 10-year period of nonuse is a substantial destruction, without due process of law, of their vested right. Id.; Froebel E. Lee, Imprescriptible Mineral Reservations in Sales of Land to the State and Federal Governments, 22 Tul. L.Rev. 496, 502 (1948). We distinguish our prior opinion of Anadarko Prod. Co. v. Caddo Parish School Bd., supra, which addressed the retroactive application of a statute that imposed imprescriptibility on unexpired and previously prescriptible mineral rights. We decline to apply the 2004 amendment retroactively to this action.

Conclusion

For the reasons expressed, the partial summary judgment is affirmed. Ruby and Son Hui Yates, WJD Carbon and Petro-hawk Properties LP are to pay all costs.
AFFIRMED.
CARAWAY, J., dissents with written reasons.

. La. R.S. 9:5806 was repealed by La. Acts 1974, No. 50, the same legislation that adopted the Mineral Code.

. The surface owner, the United States, is not a party to this suit, and none of the litigants has suggested that the U.S. is a party necessary for just adjudication under La. C.C.P. art. 641. In that the warranty deed was subject to a reservation of all minerals, it would appear that the claimants of the mineral rights may litigate their claims without the joinder of the U.S. La. C.C.P. art. 3664.