LOLLEY, J.
I,RaceTrac Petroleum, Inc. appeals a judgment of the First Judicial District Court, Parish of Caddo, Louisiana in favor of the City of Shreveport upholding the decision of the Shreveport Metropolitan Commission Zoning Board of Appeals (the “ZBA”). For the following reasons, we reverse the judgment of the trial court.
Facts
RaceTrac Petroleum, Inc. (“RaceTrac”) owns property located at 8701 Hearne Avenue, Shreveport, Louisiana, on which it operates a RaceWay gas station and convenience store. In its store, RaceTrac sells (among many other items) package beer and wine. The RaceWay store at issue fronts Hearne Avenue and is also bounded by 1-20 to the north, a used-car lot to the south, and a residential subdivision to the east. Directly across the street from the RaceWay is a Texaco gas station and convenience store, which also sells package beer and wine. The Texaco store has been in operation since 1990. Within one block of the RaceWay to the south is an AM-PM gas station and convenience store, which also sells package beer and wine and has done so since 1990. Race-Trac has seven locations in the Shreveport/Bossier City area, most of which are in Shreveport. Prior to RaceTrac acquiring the property, an Exxon gas station and convenience store had operated on the site. Again, the sale of package beer and wine was conducted at that location.
Before RaceTrac purchased the site, application was made to the ZBA to approve RaceTrac’s proposed construction of a gas station and convenience store on the former Exxon location. RaceTrac sought to have |2some of the property rezoned to “B-3,” which is a designation for an area of high intensity business use. RaceTrac also sought authority to operate 24 hours a day and a special exception use to sell beer and wine. After a public hearing in 2004 before the ZBA, which included some opposition from local residents and property owners, RaceTrac’s request received unanimous approval from the board for its special exception use. Certain site plan stipulations were included in the approval, including the construction of a fence on the eastern boundary of the RaceWay station and the residential neighborhood bordering the property.
Once RaceTrac received the requisite zoning approval, it purchased the property and constructed its RaceWay store in compliance with the ZBA requirements. When construction was complete, the RaceWay operator applied for and obtained a liquor license from City police allowing the sale of package beer and wine. The liquor license focuses on the qualifications of the applicant and is separate and apart from the special exception use zoning request, which involves a consideration of a specific location. RaceTrac obtained the liquor license.
On July 3, 2007, due to contract operator issues, the RaceWay gas station and convenience store temporarily closed down. RaceTrac was unaware of Shreveport Ordinance Section 106-1127(2), which provides that a special exception use is lost to nonuse for a period in excess of 30 days, unless written notice is furnished to the Zoning Administrator notifying of the closure. If the requisite notice is properly *803 given, the special exception use is extended for a period of up to one year.
|oOn September 13, 2007, the RaceWay store reopened. When the operator made application for a liquor license, RaceTrac was informed that the existing special exception use had lapsed and another application was required. Thus, RaceTrac found itself in the position of reapplying for another special exception use for the RaceWay store so as to reinstate the zoning classification for the sale of beer and wine.
RaceTrac claims and the record reflects that the reapplication was for the exact same facility to operate without change or modification. As before, a public hearing was conducted, and again, there was similar public opposition. However, this time, the ZBA unanimously denied the renewal request. RaceTrac appealed the ZBA’s denial to the Shreveport City Council and a public hearing was conducted on November 27, 2007. The City Council overturned the ZBA’s denial, but included a one-year renewal requirement as a condition to the grant of special exception use. Upon obtaining the requisite zoning, the RaceWay operator applied for and received the store’s liquor license. Beer and wine sales resumed at the RaceWay store on March 8, 2008.
Later in 2008, RaceTrac received notification from the City to submit its application to the ZBA to continue its special exception use. According to RaceTrac the request was identical to the prior applications and there were no changes from 2004 or 2007. As before, a public hearing was conducted and again, opposition was presented. At this hearing, some of the opposition raised came in the form of purported police calls stemming from the RaceWay store-RaceTrae claims it had never been made aware of |4any of the calls prior to that meeting. As a result, the ZBA granted the special exception use with two restrictions: (1) a one-year renewal requirement, and (2) a security requirement. The security requirement called for RaceTrac to have a post-certified uniformed officer and marked vehicle on the premises one hour prior to and two hours after the legal hours for the sale of alcohol (RaceTrac submits that amounted to 22.5 hours per day). RaceTrac maintains that these requirements were an effective denial of its renewal request.
RaceTrac appealed the ZBA’s determination to the City Council. After hearing statements from those present, both opposing and supporting the RaceWay store, the City Council modified the ZBA’s imposed security requirement, calling for security at the RaceWay store from 5:00 p.m. until 3:00 a.m. seven days a week. The one-year renewal requirement remained in place. RaceTrac timely appealed the City Council’s decision to the First Judicial District Court, Caddo Parish, Louisiana, which entered judgment in favor of the City of Shreveport. This appeal ensued by RaceTrac.
Discussion

Law

Louisiana R.S. 26:493 addresses the power of municipalities to enact local regulatory ordinances pertaining to alcoholic beverages. It provides:
Except as limited by the provisions of this Chapter the various subdivisions of the state may regulate but not prohibit, except by referendum vote as provided by Chapter 3 of this Title or by legally authorized zoning laws of municipalities, the business of wholesaling, retailing, and dealing in alcoholic beverages. No parish or municipality shall, in the exercise of its police power, regulate the business of selling such beverages more than is necessary for the protection of *804 the public health, morals, [¡¡safety, and peace. Local subdivisions, in adopting these regulatory ordinances, may provide, in addition to the ordinary penalties authorized by law for their violation, provisions which subject the permittee to having his permit suspended or revoked in the manner provided by law for the suspension or revocation of permits.
“Alcoholic beverages” means any fluid or any solid capable of being converted into fluid, suitable for human consumption, and containing more than one-half of one percent alcohol by volume, including malt, vinous, spirituous, alcoholic or intoxicating liquors, beer, porter, ale, stout fruit juices, cider, or wine. La. R.S. 26:241(1). “Beverages of low alcoholic content” means alcoholic beverages containing not more than six percent alcohol by volume. La. R.S. 26:241(l)(a). “Beverages of high alcoholic content” means alcoholic beverages containing more than six percent alcohol by volume. La. R.S. 26:241(l)(b).
Any use engaged in the sale and/or dispensing of alcoholic beverages of high or low alcoholic content is “a special exception use requiring the approval of the zoning board of appeals and subject to such terms and conditions as the board may specify to assure compatibility with existing or planned development and to protect adjacent or nearby property and uses.” Shreveport Code of Ordinances Section 106-1127. The terms and conditions may specify such things as “frequency, duration, or hours of operation; additional screening, setbacks, parking, landscaping or other site improvements; alcoholic content; method or type of service (e.g., drive-thru, with meals only, package sales only, etc.), designated service areas within a building or site.” Shreveport Code of Ordinances Section 106-1127(1).
IfiOn the subjects of land use and zoning, La. Const. Art. 6, § 17 states:
Subject to uniform procedures established by law, a local governmental subdivision may (1) adopt regulations for land use, zoning, and historic preservation, which authority is declared to be a public purpose; (2) create commissions and districts to implement those regulations; (8) review decisions of any such commission; and (4) adopt standards for use, construction, demolition, and modification of areas and structures. Existing constitutional authority for historic preservation commissions is retained.
In pertinent part, La. R.S. 33:4721 sets forth the zoning powers of municipalities as follows:
For the purpose of promoting health, safety, morals, or the general welfare of the community, the governing authority of all municipalities may regulate and restrict ... the location and use of the buildings, structures, and land for trade, industry, residence, or other purposes; provided that zoning ordinances enacted by the governing authority of municipalities or the acts of the zoning commission, board of adjustment as herein provided for, or zoning administrator shall be subject to judicial review on the grounds of abuse of discretion, unreasonable exercise of the police powers, an excessive use of the power herein granted, or the denial of the right of due process, provided, further, that the right of judicial review of a zoning ordinance shall not be limited by the foregoing.
Pursuant to Shreveport Code of Ordinances Section 106-48, an appeal may be taken by any person aggrieved by a decision of the board of appeals for a review by the city council of such decision. After such review, the city council shall either affirm, modify, reverse or remand the decision rendered by the board of appeals. Any person aggrieved by the decision of the city council shall have the right to *805 appeal the decision to a court of appropriate jurisdiction.
Zoning is a legislative function, the authority for which flows from the police power of governmental bodies. King v. Caddo Parish Com’n, 1997-1873 (La.10/20/98), 719 So.2d 410; Prest v. Parish of Caddo, 41,039 (La.App.2d Cir.06/02/06), 930 So.2d 1207. Courts will not interfere with this legislative prerogative unless the zoning decision is palpably erroneous and without any substantial relation to the public health, safety or general welfare. King v. Caddo Parish Commission, supra; Prest v. Parish of Caddo, supra.
The zoning board has the power to grant “special use” permits. These permits allow a landowner to vary from the strict terms of a zoning ordinance. King v. Caddo Parish Commission, supra.
The procedure for issuing special use permits must be sufficiently definite to notify landowners of their right to request such a permit. Id. In addition, the standards for granting a special use permit must ensure equal treatment for all applicants to prevent the board of zoning appeals from exercising its power arbitrarily. Id. Special use classifications are entitled to the same standard of review as other zoning enactments. Morton v. Jefferson Parish Council, 419 So.2d 431 (La.1982).
The property owner has the burden to establish by a preponderance of evidence that the decision to deny the special exception has no substantial relationship to public health, safety, morals or general welfare of the municipality. King v. Caddo Parish Commission, supra; Prest v. Parish of Caddo, supra.
A prima facie presumption of validity attaches to zoning board actions. A reviewing court cannot substitute its own judgment; it cannot interfere absent a showing that the board was arbitrary and capricious or Rabused its discretion. Clark v. City of Shreveport, 26,638 (La.App.2d Cir.05/10/95), 655 So.2d 617; Papa v. City of Shreveport, 27,045 (La.App.2d Cir.09/29/95), 661 So.2d 1100, writ denied, 1995-2544 (La.01/05/96), 666 So.2d 295. Generally, the action of a governmental body is arbitrary and capricious and unreasonable if it bears no relation to the health, safety, or general welfare of the public. Clark v. City of Shreveport, supra; Papa v. City of Shreveport, supra. The test of whether an action is arbitrary or capricious is whether the action is reasonable under the circumstances. King v. Caddo Parish Commission, supra; Papa v. City of Shreveport, supra; Prest v. Parish of Caddo, supra. Where permits are granted in similar situations and refused in others, the refusal to grant a permit may constitute nonuniform application of zoning ordinances that is arbitrary and unreasonable. Clark v. City of Shreveport, supra; Papa v. City of Shreveport, supra.
A challenge to a zoning decision in Louisiana is a de novo proceeding in which the issue is whether the result of the legislation is arbitrary and capricious, and is therefore a taking of property without due process of law. Palermo Land Co. v. Planning Commission of Calcasieu Parish, 561 So.2d 482 (La.1990); King v. Caddo Parish Commission, supra; Papa v. City of Shreveport, supra. A reviewing court does not consider whether the district court manifestly erred in its findings, but whether the zoning board acted arbitrarily, capriciously or with any calculated or prejudicial lack of discretion. King v. Caddo Parish Com’n, supra. Whenever the propriety of [ 9a zoning decision is debatable, it will be upheld. Papa v. City of Shreveport, supra; Prest v. Parish of Caddo, supra.
*806 In determining the reasonableness of the city council’s decision, the appellate court must review the opinions and concerns raised at the public hearing, as well as the testimony presented at trial. Expressions of opinion made by citizens to a legislative body serve as a manner by which the legislative body learns the will of the people and determines what may benefit the public good. Prest v. Parish of Caddo, supra.

Analysis

The first two assignments of error raised by RaceTrac are related. First, it argues that the trial court erred as a matter of law in its determination that the City Council’s 2008 decision was not arbitrary and capricious and violated Raee-Trac’s due process rights. Second, Race-Trac submits that the trial court erred as a matter of law in its determination to affirm the City Council’s imposition of a security requirement and one-year renewal requirement to the RaceWay store at issue. We agree with RaceTrac that the City Council’s action was arbitrary and capricious. For the following reasons, we hold that the trial court erred in not so finding and in affirming the security requirement and one-year renewal imposed by the City Council.
We have conducted a de novo review of the appeal at hand, and in so doing have considered the proceedings before the City Council and the hearing at the trial court. We are called to consider whether the City Council’s decision to deny the special exception use . has no substantial | ^relationship to the public health, safety, morals or general welfare of the municipality. The action by the City violated La. R.S. 26:493 because it overstepped its authority in regulating the sale of alcohol at this particular convenience store. Specifically, considering the facts of this case, we believe the security requirement is a regulation that is “more than necessary for the protection of the public health, morals, safety, and peace” of the community. So considering, and applying the applicable standard of review, we conclude that the City Council acted arbitrarily and capriciously in its imposition of the security and one-year renewal requirements for the following reasons.
Initially, the record reflects that Race-Trac met all the requirements under the ZBA guidelines for approval of the special exception use in 2004 when it originally opened, and, in fact, when making the application, the owners specifically addressed some of the precise concerns of the opposition. However, as stated, in 2008 when the ZBA imposed the security requirement, it mandated a 22.5 hour a day security requirement despite the fact that there had been no changes in Race-Trac’s application. Whereas the City decreased the number of hours of security required, its imposed security requirement still was regulation that was more than necessary, especially considering the lack of a substantial relationship between the complaints and the specific regulation imposed. Although the ZBA and City Council considered certain complaints by citizens regarding litter, traffic and crime they associated with the RaceWay store, we do not find the restriction is related to the problems complained of, thus making the Insecurity requirement an arbitrary and capricious restriction against Race-Trac.
We begin by asking, what was the basis of the imposition of the security requirement? Ostensibly, the security requirement was imposed due to the high number of phone calls to the police originating from and over the RaceWay store. The City Council considered the testimony of citizens who lived and conducted business *807 in the neighborhood, John Darrett and Sam Jenkins. They both expressed concerns over the traffic and crime they attributed to the RaceWay store. There was testimony regarding the number of police calls made, many of which originated from the RaceWay store itself. The record reflects, however, that none of the problems, as evidenced either by the police calls or citizen complaints, were alcohol-related. In fact, it appears from the dialog at the City Council meeting that the problems surrounding the RaceWay station were problems that other neighborhoods in the city had experienced — problems described at the City Council as “gathering,” “loitering,” “cruising,” and “parading.” These complaints do not appear to be caused by the RaceWay store or related to its sale of alcohol. Rather the problems, which apparently migrated to that portion of Hearne Avenue from other areas of the city, were caused by the community in which the RaceWay store is located. Clearly, it is the conduct of the residents that appears to be unlawful and troublesome, not the conduct of RaceTrac.
We readily agree that had RaceTrac violated the laws directly related to its special exception use and the sale of alcohol, then the City Council h2would have been clearly within its province in restricting the special exception use in such a way. However, in this case the security requirement is not directly related to the complaints and/or problems faced by but not caused by the RaceWay store. In fact, it would appear that on some level, the store itself is a victim of the activity in the neighborhood, just as the area residents and other business owners. Just because the store is apparently attractive in its appearance and location, it unfortunately appears to draw bad actors. Certainly, the RaceWay store has the right to police protection as any other citizen, individual or corporate, and it should not now be penalized for calling on the police when needed.
Further, we think the City Council’s actions as to RaceTrac were arbitrary and capricious because it is being treated in a non-uniform manner in three ways. First, we consider how RaceTrac is being treated in relation to other gas stations/convenience stores in the city of Shreveport. The evidence indicates that this RaceWay station is the only gas station/convenience store in all of Shreveport to have such a security requirement imposed upon it. Moreover, there are three other gas station/convenience stores which operate in an extremely close proximity of the RaceWay store. In fact, the Texaco station/convenience store is directly across the street. All of these locations sell beer and wine, but none of these facilities is subject to any security requirement. Thus, RaceTrac is being treated in a nonuniform matter to other similarly situated businesses within the City.
1 |SSecond, we consider how RaceTrac is being treated within its own operation in the city of Shreveport. RaceTrac operates four more locations in Shreveport, which facilities are virtually identical to the Hearne Avenue location. None of these are subject to the security requirement as the RaceWay store in question. Again, RaceTrac is being treated in a non-uniform matter by the City within its own organization-this RaceWay store has been singled out among all of RaceTrae’s stores in the City by virtue of the neighborhood it has located in.
Third, and finally, this specific RaceWay store is being treated in a non-uniform matter from the way is had been previously treated by the City. It had originally received unanimous approval from the ZBA for its special exception use in 2004; thus, it was itself treated differently in *808 2008. The record reflects that the store operated without incident until 2007, and had it not been for short-term closing and loss of its special exception use, it would not have been subjected to re-evaluation and the imposition of the security requirement as a result. Thus, we see another example of non-uniform treatment as to this RaceWay store.
For the same reasons stated regarding the security requirement, we also conclude that the one-year renewal requirement is not based on a valid reason and also is a non-uniform application of the pertinent statute. Had the RaceWay store seen violations directly related to its special exception use and alcohol license, then we might be inclined to consider that the one-year restriction would be necessary.
114Finally, considering our decision herein, a determination of the constitutionality of Shreveport City Ordinance 106-1127(1) is moot and will not be considered herein.
Conclusion
For the reasons stated herein, the trial court’s judgment affirming the Shreveport City Council’s actions regarding the special exception use application for RaeeTrac Petroleum, Inc. is reversed. Costs of this appeal are assessed against the City of Shreveport in accordance with the provisions of La. R.S. 13:5112 in the amount of $1,864.50.
REVERSED.
BROWN, C.J., dissents for the reasons assigned by Judge Gaskins.
GASKINS, J., dissents with written reasons.